UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Southern Division)

| | |
|---|---|
| CHARLES DEE | * |
| Plaintiff, | * |
| v. | * CASE NO. : 09-cv-0491-RWT |
| MARYLAND NATIONAL CAPITOL PARK & PLANNING, *et al.*, | * |
| Defendants. | * |

**PLAINTIFF'S OPPOSITION TO**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW the Plaintiff, Charles Dee, by and through his attorney, Erwin R.E. Jansen, Esquire, in response and opposition to the motion of Defendant, The Maryland National Capital Park and Planning Commission (hereinafter "the Commission")[1], for summary judgment, and in support thereof states as follows:

**Introduction and Factual Background**

Plaintiff brought his Complaint alleging violations of the Americans with Disabilities Act of 1990, 42 U.S.C. 126 et seq. (hereinafter the "ADA"). Plaintiff specifically asserted that he is blind. See Complaint at ¶ 6; Deposition of Charles Dee, attached hereto as Exhibit A and incorporated by reference, at pp. 19-20. Mr. Dee further alleges that he visited the Allentown Splash Park and Fitness Center on June 15, 2004. See Complaint at ¶ 5. He decided on the afternoon of June 15 that he wanted to work out. See Dee deposition

---

[1] Plaintiff also brought suit against the Prince George's County Planning Department. Defendant, as part of its Motion, asserts that the Commission is the proper party for purposes of liability in this action. Plaintiff accepts this declaration on its face, and is therefore unopposed to the dismissal of the Prince George's County Planning Department without prejudice.

at p. 36.  On the date of his visit, Mr. Dee telephoned the facility approximately 30 minutes prior to his arrival in order to request an accommodation.  Id. at p  42.  He spoke with the facility manager, Rhonda Richardson.  Id. at p. 43.  Mr. Dee communicated to Ms. Richardson that he was blind and would require assistance getting from the facility lobby to the weight room.  Id.  He was particularly concerned about  navigating the swimming pool and Jacuzzi which he knew to be situated immediately adjacent to his only path of access to the weight room. Id. at pp. 47-48.  Mr. Dee asked several times for assistance in getting safely to the weight room area and was denied each time.  Id. at pp. 48, 50-51, 53-55.  Mr. Dee clearly articulated to Ms. Richardson the nature of his request for assistance, yet Ms. Richardson rudely denied his request for help again and again. Id. at pp. 61-62.  Mr. Dee offered to wait until a Commission employee would be available to help him and he was told that no one would ever be available to help him.  Id.  Mr. Dee felt belittled and defeated by the entire circumstance, and left the facility.  Id. at p. 56.

       Defendant has brought a Motion for Summary Judgment, asserting that Plaintiff failed to provide reasonable notice to the Commission of his need for accommodation.  Defendant's Motion further asserts that the alleged lack of notice by Mr. Dee resulted in confusion and a lack of understanding by Ms. Richardson of the true nature of the necessary accommodation.   Plaintiff contends that there are genuine issues of material fact which preclude summary judgment, and that the question of sufficiency of the notice is one for the finder of fact.  For those reasons, Plaintiff requests that the Motion for Summary Judgment be denied as a matter of law.

**Standard of Review**

A motion for summary judgment will be granted only if there exists <u>no</u> genuine issue as to <u>any</u> material fact and the moving party is entitled to judgment as a matter of law. FRCP 56(c)( emphasis added);  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S.Ct. 2505 (1986);  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S.Ct. 2548 (1986). The moving party bears the burden of showing that there is no genuine issue as to any material fact. FRCP 56(c);  <u>Charbonnages de France v. Smith</u>, 597 F.2d 406 (4th Cir. 1979).  When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 82 S.Ct. 993 (1962);  <u>Gill v. Rollins Protective Services Co.</u>, 773 F.2d 592 (4th Cir. 1985).  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  "[A] complete failure of proof concerning an essential element necessarily renders all other facts immaterial."  <u>Celotex</u>, 477 U.S. at 323.

**Argument**

    **I.**    **The Law Mandates Accommodation**

The ADA provides that, "No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.130 (a). The statute further provides that "no qualified individual with a disability shall, because a public entity's facilities are inaccessible to or unusable by individuals with disabilities, be excluded from participation in, or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." 28 C.F.R. § 35.149. It is clear that, "a public entity shall operate each

service, program, or activity so that the service, program, or activity, when viewed in its entirety, is *readily accessible to end usable by* individuals with disabilities." 28 C.F.R. § 35.150(a) (emphasis added).

The phrase "readily accessible to and usable by individuals with disabilities" means, with respect to a facility or a portion of a facility, that it can be approached, entered, and used by individuals with disabilities (including mobility, sensory, and cognitive impairments) easily and conveniently.  Appx B to 28 C.F.R. § 36.401(a)(1).  A public entity may comply with the accessibility requirements of the ADA through such means as structural changes, redesign of equipment, and reassignment of services.  28 C.F.R. § 35.150(b)(1).  <u>In cases where a physical alteration to a property is not required, alternative methods of achieving program accessibility include assigning persons to guide individuals with handicaps into or through portions of properties that cannot otherwise be made accessible</u>.  28 C.F.R. § 35.150(b)(2)(ii).

It is indisputable that the Commission is a public entity governed by the auspices of the ADA.  It is also uncontroverted that the Allentown facility is a public accommodation as defined by the Act.  In its Motion the Commission asserts that Mr. Dee did not make a reasonable request for an accommodation because he telephoned the staff at the Allentown facility only 30 minutes before his arrival.  For purposes of this Motion, the Court is required to accept as true that Mr. Dee's only request for accommodation was for assistance in navigating his way to the weight room, and that the request was clearly articulated to Ms. Richardson.

In order to determine whether Plaintiff's request was reasonable, it is necessary to examine both the request and the ability of the public entity to accommodate the request.

The Commission cites <u>Waller v. City of Danville, Virginia</u>, 556 F.3d 171, 175 (4th Cir. 2009) for the premise that "reasonableness in law is generally assessed in light of the totality of circumstances." Plaintiff agrees with this premise. The Commission provided training to its employees with regard to the requirements of the ADA. The Commission specifically provided information and training to its employees regarding how to engage blind patrons that they may encounter. <u>See</u> "Visual Disabilities" materials; "Parks and Recreation" guidelines; "Facility Accessibility" guidelines; attached hereto as Group Exhibit B, and "Tips For Guiding Individuals With Visual Impairments"; and "Visual Impairments programming guidelines, attached hereto as Group Exhibit C. All of these materials reference assisting a blind person physically, which was the only accommodation requested by Plaintiff. The existence of these documents suggests that the Commission intended to have employees who were prepared to receive persons with disabilities. Yet somehow there was a failure to implement the policy when Mr. Dee walked into the Allentown facility.

Plaintiff's request for accommodation only required the amount of time that it would take one employee to guide Plaintiff from the facility lobby to the weight room area. Defendant, in its Motion has not asserted that there were not sufficient staff to accommodate the request, nor has it provided any evidence to support the assertion that provision of the accommodation was not readily achievable. Instead, Defendant simply declares that the request was unreasonable – and that the accommodation could not be made – because the request was made 30 minutes before Plaintiff's arrival. The totality of circumstances here strongly suggests that the request for accommodation was reasonable and the accommodation should have been provided.

In requiring that facilities governed by the ADA be "readily accessible to and usable by disabled persons", it is Plaintiff's contention that Congress intended for persons with disabilities to conveniently be able to physically enter into a particular building and utilize the facility to the same extent as persons without disabilities.  Moreover, it is Plaintiff's contention that, as it specifically relates to blind persons, "readily accessible and usable" means that person should be able to access a public accommodation without providing any advance notice, particularly if the blind person is willing to wait for assistance/guidance once inside the public accommodation.  In essence, there are certain situations where the public accommodation should be prepared at all times to accommodate the needs of a disabled person.  There is support for this position in the ADA Title III Technical Assistance Manual published by the United States Department of Justice.  The Manual provides the following:

> **"III-4.3000 Auxiliary aids**
>
> **III-4.3100 General.** A public accommodation is required to provide auxiliary aids and services that are necessary to ensure equal access to the goods, services, facilities, privileges, or accommodations that it offers, unless an undue burden or a fundamental alteration would result.
>
> Who is entitled to auxiliary aids? This obligation extends only to individuals with disabilities who have physical or mental impairments, such as vision, hearing, or speech impairments, that substantially limit the ability to communicate. Measures taken to accommodate individuals with other types of disabilities are covered by other title III requirements such as "reasonable modifications" and "alternatives to barrier removal."
>
> ILLUSTRATION: W, an individual who is blind, needs assistance in locating and removing an item from a grocery store shelf. A store employee who locates the desired item for W would be providing an "auxiliary aid or service."

The Manual further provides:

> **"III-4.3300 Examples of auxiliary aids and services.** Auxiliary aids and services include a wide range of services and devices that promote effective communication. Examples of auxiliary aids and services for individuals who are deaf or hard of hearing include qualified interpreters, notetakers, computer-aided transcription services, written materials, telephone handset amplifiers, assistive listening systems, telephones compatible with hearing aids, closed caption decoders, open and closed captioning, telecommunications devices for deaf persons (TDD's), videotext displays, and exchange of written notes.
>
> Examples for individuals with vision impairments include qualified readers, taped texts, audio recordings, Brailled materials, large print materials, and <u>assistance in locating items</u>." (Emphasis added).

It is important to note that neither the ADA itself, nor the Department of Justice Manual, imposes a time component which would invalidate a request for accommodation were the time limit not to be met. On the contrary, the Department of Justice provides illustrations which clearly indicate that making a facility "readily accessible and usable" requires the provision of auxiliary aids, including - in the example of a visually impaired person – provision of "assistance in locating items." There is no indication whatsoever that a blind person should have to give two weeks notice[2] to a grocery store before going shopping if that person required only the accommodation of assistance in finding items within the store.

Neither is there any support in the law for Defendant's suggestion that because Plaintiff arranged for a taxi a day in advance of his trip to the Allentown facility, he should have provided the Allentown facility with similar notice of his request for accommodation.

---

[2] The Commission's policy is that a patron provide notice of a request for accommodation two weeks in advance of the accommodation. <u>See</u> "How to Make an Inclusion Accommodation Request" attached hereto as Exhibit B.

Defendant fails to cite any authority which supports its position that the reasonableness of a request for accommodation is by any means tied to the manner in which the disabled party provides notice in any other aspect of his existence. By this logic, if Mr. Dee happened to make a dinner reservation three weeks in advance, Defendant would argue that he should have also called Allentown three weeks ahead of time. The fact is that there are certain restaurants that one can walk into without a reservation and others where significant advance planning is required. Likewise, the ADA dictates that there are certain requests for accommodation which, in order to be reasonable, must be made in a manner that allows the public accommodation sufficient opportunity to provide the necessary accommodation.

In the case at bar, Plaintiff provided adequate notice to the facility manager such that an employee could reasonably have been delegated the task of assisting Mr. Dee to the area of the facility where he desired to go. Again, it seems that the Commission trained its employees to assist blind persons who came to the facility. There can be no argument that access which would turn every blind patron away with instruction to plan future visits two weeks in advance is no access at all.

Despite the fact that there is no dispute as to the amount of notice that Plaintiff provided to Defendant, Defendant's Motion must fail as there is no support in the law for the assertion that 30 minutes notice is *per se* unreasonable for this or any other request for accommodation. As it is Defendant's burden to demonstrate that there exist no genuine issues of material fact, the Motion must be denied as a matter of law.

## II.   The Request was Clearly Communicated

Defendant next asserts that the nature of Plaintiff's request for accommodation was not clearly understood by the Allentown staff and therefore Plaintiff cannot establish that he

communicated a request for an accommodation of his disability. It should first be noted that that for purposes of Defendant's Motion for Summary Judgment Plaintiff need only establish that there is a genuine dispute of material fact regarding the communication of his request for accommodation. Whether or not plaintiff actually communicated a request for an accommodation of his disability is ultimately a question for the finder of fact. Yet it cannot be denied that Plaintiff has testified under oath that he spoke with Ms. Richardson and told her that he required an accommodation.

On its face, Plaintiffs request was not complex. He has testified – and this Court must accept as true – that he was clear in making his request to Ms. Richardson. He further testified that the request was made repeatedly, and that someone whom Plaintiff could not identify offered to assist him. It also seems clear, based on Plaintiff's deposition testimony, that Ms. Richardson was contentious and mean spirited in the tone that she took with Plaintiff. There is sufficient evidence from Plaintiff to support his contention that Ms. Richardson not only denied him a reasonable accommodation, but that she intentionally withheld access to the facility.

Defendant argues that Ms. Richardson's statement "we can't change you" demonstrates that there existed confusion by Ms. Richardson regarding the nature of the request. Yet there is no legal support for Defendant's supposition that confusion on the part of the facilities manager renders the request for accommodation invalid. On the contrary, Plaintiff is only required to establish that he communicated a request for accommodation of his disability. Ballard v. Rubin, 284 F.3d 957 (8th Cir. 2002). He is not required to establish the Defendant's understanding of his request for accommodation.

Were the legal standard to be that which Defendant presents in its Motion, it would be very easy for public entities and/or public accommodations to sidestep its legal obligation under the statute. The only requirement would be testimony that the request for accommodation was not understood. Again, this line of argument is completely contrary to the spirit of the ADA.

Charles Dee is blind. He is neither incompetent nor incontinent. For Ms. Richardson to hear "I am blind and I require assistance" and reply "we can't change you" demonstrates that there existed a complete lack of training and/or readiness on the part of this facility to accommodate a person who was visually impaired. Defendant asserts, "Given Mr. Dee's spur-of-the-moment accommodation request, Ms. Richardson was unable to accurately understand the nature of the request made." See Motion for Summary Judgment at p. 6. This argument infers that Ms. Richardson would have had a heightened level of understanding had Mr. Dee simply called the day before. Of course, there is no basis in fact or logic for this argument. That notwithstanding, within the context of this motion, it is of no consequence whether Ms. Richardson accurately understood the nature of the request provided that Mr. Dee can demonstrate that the request was made. Through his deposition testimony Plaintiff has adequately established that the request was made, and Defendant's argument must fail.

### III.  Plaintiff Can Establish Intentional Discrimination

Defendant's final argument is that Plaintiff cannot meet his burden of proving that the Commission intentionally discriminated against him because he failed to provide reasonable advance notice of his request for an accommodation. Defendant also asserts that Plaintiff cannot prove that a violation of the ADA caused actual injury. Once more,

Defendant's argument completely ignores Mr. Dee's deposition testimony. For purposes of his opposition to Defendant's motion, Mr. Dee need not prove intent. At this stage, Plaintiff need only prove that evidence exists which, were it to be relied upon by the finder of fact, would be sufficient to prove that the Commission intentionally discriminated against him.

Mr. Dee's testimony alone provides sufficient factual support for the allegation that Ms. Richardson intentionally failed to provide an accommodation where the law clearly obligated her to do so. Mr. Dee specifically testified that Ms. Richardson not only told him that she would not help him, but actively prevented at least one other person from providing assistance. Notwithstanding this testimony, the Defendant somehow blames Plaintiff for his own injuries, arguing that "the cause of any injury was the lack of reasonable advanced notice of the accommodation request." Defendant further argues that permitting damages in this circumstance would allow any party to make a last minute accommodation request and then recovery damages when the request was unable to be satisfied. Defendant's argument misstates Plaintiff's position and is otherwise flawed.

Plaintiff argues only that a blind person should be able to walk into a public gymnasium – without advance notice – and receive guidance getting from the entrance of the building to the specific area that he/she desires to use. That is the only request for accommodation that was made by Plaintiff. It was not complex, and was not unduly burdensome. The evidence before this Court is sufficient to show that the Commission had adequate staff to accommodate the request, and that an offer to assist was made. The evidence also demonstrates that Defendant – in the person of Rhonda Richardson – intentionally refused to assist Plaintiff, thereby denying him access to the facility based solely on his disability.

**Conclusion**

Plaintiff has demonstrated that there exist genuine issues of material fact which preclude the entry of summary judgment in this case. For the reasons set forth above, Plaintiff, Charles Dee, respectfully requests that Defendant's Motion for Summary Judgment be denied.

Respectfully Submitted,

**THE LAW OFFICES OF
ERWIN R.E. JANSEN, LLC**

/s/
Erwin R.E. Jansen, Esquire  (**Bar No.: 16283**)
4550 Forbes Boulevard
Suite 110
Lanham, Maryland 20706
(301) 429-9797
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of December, 2009, a true and correct copy of the foregoing was served by e-filing or first class mail, postage pre-paid, on the following:

Jared M. McCarthy, Esquire
6611 Kenilworth Avenue
Suite 403
Riverdale, Maryland 20737

/s/
Erwin R.E. Jansen, Esquire

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
(Southern Division)

| | |
|---|---|
| **CHARLES DEE** | * |
| **Plaintiff,** | * |
| v. | * CASE NO. : 09-cv-0491-RWT |
| **MARYLAND NATIONAL CAPITOL PARK & PLANNING,** *et al.*, | * |
| **Defendants.** | * |

## **ORDER**

This Matter having come before the Court on Defendant's Motion for Summary Judgment, and the Court having fully considered the Motion and all Opposition thereto, it is hereby ORDERED:

That Defendant's Motion be, and hereby is, DENIED.

_____
Judge, United States District Court