IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES DEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. CBD-09-491 |
| | ) | |
| THE MARYLAND NATIONAL CAPITOL PARK AND PLANNING COMMISSION, *et al.*, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

I. **Factual Background and Procedural Posture**

Charles Dee alleges violations of Title II of the Americans with Disabilities Act ("ADA"). 42 U.S.C. §§ 12101-12134 (2010).[1] Mr. Dee is blind and alleges that on June 15, 2004 he was unable to use the facilities at Allentown Splash Park and Fitness Center ("Allentown") because Allentown would not make reasonable accommodations for him as mandated by the ADA. Both parties agree that Mr. Dee called Allentown to request an accommodation about thirty minutes before his arrival.[2] The parties disagree about whether the accommodation Mr. Dee requested was reasonable. Mr. Dee alleges that when he called Allentown, he requested assistance with entering and exiting the building as well as with walking

---

[1] It is important to note that Mr. Dee never cites the ADA as the statutory basis for his lawsuit. Instead, he uses the statute's name, Americans with Disabilities Act, while citing 42 USC 126 et seq. He fails to properly cite the statute in both his complaint and in his opposition to summary judgment. Additionally, the statutory language he cites is not from the ADA itself, but rather, from the ADA's regulations. While these errors are insufficient to grant summary judgment out-of-hand, Mr. Dee is cautioned to use the correct statute to prove his case at trial and is directed to file an Amended Complaint correcting these problems within 21 days.

[2] The Maryland Commission on Human Rights (MCHR) disagreed with both parties, finding that Mr. Dee gave Allentown fifteen to twenty minutes notice. Defendant's Motion, Exhibit 2, Written Findings of the MCHR, at 4. For discussion on the weight of MCHR findings at summary judgment see infra p. 7 n.5.

1

between the locker room to the weight room. Mr. Dee was particularly concerned about navigating around the pool and Jacuzzi, which he knew to be immediately adjacent to the only path from the locker room to the weight room. Defendants claim that Mr. Dee's accommodation request was unclear and caused confusion among Allentown staff. Mr. Dee claims that approximately five times he made his request clearly.

Mr. Dee unsuccessfully pursued a discrimination claim before the Maryland Commission on Human Relations (MCHR). Mr. Dee then filed suit against the Maryland Capital Park and Planning Commission ("the Commission") and the Prince George's County Planning Department ("the Planning Department") in the Prince George's County Circuit Court. The Commission removed the suit to this Court on February 27, 2009.

## II. Parties' Arguments

### a. *Defendants' Arguments*

Defendants move for summary judgment under Federal Rule of Civil Procedure 56. First, Defendants argue that "the Prince George's County Planning Department is an internal department of the Maryland-National Capital Park and Planning Commission and is not independently liable separate from the Commission." Defendant's Motion, at 3. As such, they request that the County Planning Department be dismissed as an independent party. Second, Defendants argue that that Mr. Dee provided Allentown with only thirty minutes notice of his arrival and need for accommodation. They argue that this lack of notice renders Mr. Dee's request unreasonable as a matter of law. Third, Defendants contend that Mr. Dee's specific accommodation request was not clear to the Allentown staff. This lack of clarity impeded Allentown's staff's ability to engage in a fact-based inquiry to determine whether the request was reasonable. A public entity must make a factual inquiry to determine whether an

accommodation request is reasonable, and Allentown staff members were unable to do so because Mr. Dee's request was unclear. Thus, the request does not support a prima facie case for discrimination. Fourth, Defendants argue that Mr. Dee will not be able to prove that Defendants intentionally discriminated against him, which is essential to recover the compensatory damages he seeks. In support of their motion, Defendants present the findings of the MCHR, which concluded that Mr. Dee's fifteen to twenty minutes notice to Allentown was unreasonable and that Allentown did not discriminate against him under the ADA. Because Mr. Dee neither provided reasonable notice nor a clear request for accommodation, the Defendants were not able to engage in the accommodation process as envisioned by the ADA. Defendants contend that Mr. Dee cannot, as a matter of law, prevail on his claim of discrimination under the ADA.

      b. *Plaintiff's Arguments*

Plaintiff opposes Defendant's Motion, arguing "that there are genuine issues of material fact which preclude summary judgment, and that the question of sufficiency of notice is one for the finder of fact." Plaintiff's Opposition, at 2. The ADA mandates providing reasonable accommodation to qualified individuals. Mr. Dee argues that as a qualified individual, he requested a reasonable accommodation under the ADA, and Allentown refused to provide that reasonable accommodation.

Plaintiff asserts that "Mr. Dee's only request for accommodation was for assistance in navigating his way to the weight room and that the request was clearly articulated." Id. at 4. Plaintiff asserts that in contravention to the ADA, Allentown was not "readily accessible to and usable by disabled persons." Id. For blind persons, like Mr. Dee, this means that a "person should be able to access a public accommodation without providing any advance notice, particularly if the blind person is willing to wait for assistance/guidance once inside the public

accommodation." Id. at 6. Plaintiff cites the ADA Title II Technical Assistance Manual in support of this proposition. "A reasonable accommodation contemplated by the ADA is providing a guide to individuals with handicaps into or through portions of properties that cannot otherwise be made accessible." Id. at 4. See also 28 C.F.R. § 35.150(b)(2)(ii). Additionally, Plaintiff asserts that there is no law to support Defendants' assertion that thirty minutes notice is per se unreasonable. The totality of the circumstances indicates that the request was reasonable.

Lastly, Plaintiff contends that he can establish intentional discrimination to prove actual injury and recover compensatory damages. First, Plaintiff establishes that for the purposes of opposing Defendants' Motion, Plaintiff need not prove intent. Instead, Mr. Dee's testimony alone provides sufficient support for an allegation of intentional discrimination. Allentown's staff member refused to help Mr. Dee and actively prevented another staff member from assisting him. Plaintiff's Opposition, at 11. The "evidence is sufficient to show that [Allentown's staff member]… intentionally refused to assist Plaintiff, thereby denying him access to the facility based solely on his disability. Id.

### III. Legal Standards

    a. *Summary Judgment Standard under the Federal Rules of Civil Procedure*

Federal Rule of Civil Procedure 56 provides the standard for summary judgment. The rule provides that "the judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). Essentially, "the moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986). Vital to this standard is that the disputed fact must be material; "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original). A fact is "material" when the result of a dispute about it could affect the outcome of the suit under governing law. Id. at 248. A dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The moving party must demonstrate that the non-moving party cannot make his case on more than just the pleadings, that the non-moving party could not point to specific facts that would allow a reasonable jury to find in its favor. See Celotex Corp., 477 U.S. at 324 (1986).

In considering the facts before it for summary judgment, the Court must believe all evidence from the non-moving party, and "all justifiable inferences are to be drawn in his [or her] favor." Anderson, 477 U.S. at 255. For summary judgment, the Court must "view the evidence in the light most favorable to … the nonmovant." Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639, 645 (4th Cir. 2002). See also, United States v. Diebold, Inc., 369 U.S. 654 (1962); Gill v. Rollins Protective Servs. Co., 773 F.2d 592 (4th Cir. 1985). However, "while the facts and all reasonable inferences drawn therefrom must be viewed in the light most favorable to the party opposing the motion… its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Levy v. Mote, 104 F. Supp. 2d 538, 542-43 (D. Md. 2000) (internal citations omitted).

To prevail on summary judgment, Defendants must demonstrate that there is no material issue of fact in dispute - that no reasonable jury could find for Plaintiff because, as a matter of law, he has not satisfied at least one element of his claim or the applicability of a complete affirmative defense.

b. *Americans with Disabilities Act*

The ADA was passed "to provide a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. §§ 12101(b)(1) & (b)(4). Plaintiff sues under Title II of the ADA, which provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Title II aims to ensure public accessibility for individuals with disabilities. The ADA applies to "qualified" individuals with disabilities and it is uncontested in the present case that Mr. Dee, who is blind, is qualified under the ADA. Defendant's Motion, at 2; Plaintiff's Opposition, at 1; Plaintiff's Opposition, Exhibit 3, at 4.

The ADA provides causes of action and remedies for individuals, both against private citizens and the government.[3] When an individual sues the government under Title II of the ADA, both injunctive relief and compensatory damages are available. 42 U.S.C. § 12133. The remedies available under Title II of the ADA are incorporated from the Rehabilitation Act. 29 U.S.C. 794(a); 42 U.S.C. § 12133. The Rehabilitation Act derives its remedies from Title IV of the Civil Rights Act of 1964. 29 U.S.C. § 794(a); 42 U.S.C. § 2000(d). Thus, the remedies available to individuals under Title IV of the Civil Rights Act of 1964 are the only remedies available under Title II of the ADA.

While the ADA mandates that public entities make accommodations so that people with disabilities may enjoy public facilities and events, it is not without limit. The ADA mandates that public facilities make *reasonable* accommodations to ensure their equal enjoyment. The

---

[3] For discussion of the ADA's abrogation of sovereign immunity see infra pp. 8-9.

ADA also mandated that the Department of Justice promulgate implementing regulations for the ADA which plot the statute's contours and provide instruction for compliance. While these regulations provide useful guidance and the Court is deferential to them, they are not dispositive of the issues here.[4]

The ADA implementing regulations were meant to "effectuate" the act. 28 C.F.R. § 35.101 (2010). The regulations provide that an entity's compliance with the law should be "viewed in its entirety" to ensure it is "readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150(a). The regulations also place limits on what accommodations are reasonable. For example, public entities are not responsible for assistance with toileting, bathing, or eating. 28 C.F.R. § 35.135. And, if a public facility is not inherently accessible, the facility need not necessarily make structural changes, the act provides alternate methods of compliance. 28 C.F.R. § 35.150(b)(2)(ii). One such method is to provide guides to help navigate the physical space. 28 C.F.R. § 35.150. The foregoing regulations are relevant here

---

[4] In support of his opposition, Plaintiff cites several of these implementing regulations. However, he mistakenly relies upon them for the statutory backbone of his case. While the ADA regulations provide the Court with useful guidance, these regulations do not carry the same weight as does the statute itself. Specific guidance on how a Court should weigh regulations is available in the common law, though "the Supreme Court has yet to decide whether the [ADA] regulations are entitled to the full deference afforded under Chevron, U.S.A., Int. v. NRDC, 467 U.S. 837, 844 (1984)." A Helping Hand v. Baltimore Cnty., Md., 515 F.3d 356, 362 (4th Cir. 2008) (internal citations omitted). In Chevron, the Court explained that the Court "has long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer and the principle of deference to administrative interpretations."[4] Chevron, 467 U.S. at 844. Though it is unclear whether Chevron applies to the ADA regulations, the Supreme Court has "counseled that the views expressed by the Department of Justice in implementing regulations 'warrant respect'." Id. (specifically with reference to Title II) (citing Olmstead v. L.C., 527 U.S. 581, 597-98 (1999)); see also Tennessee v. Lane, 541 U.S. 509, 532 (2004) (where the Court used the implementing regulations in determining how the standards set in the ADA are reasonably met). In Olmstead, the Supreme Court declined to opine on whether the deference outlined in Chevron, applied to the ADA implementing regulations, but it did review that "it is enough to observe that the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance." Olmstead, 527 U.S. at 597-98 (quoting Bragdon v. Abbott, 524 U.S. 624, 642 (1998)). The Fourth Circuit has followed suit, using implementing regulations to clarify the standards expressed in the ADA and affording them deference when interpreting the ADA. See e.g., A Helping Hand, 515 F.3d at 362; Laird v. Redwood Trust LLC, 392 F.3d 661, 664-65 (4th Cir. 2004); Smith-Berch, Inc. v. Baltimore Cnty., Md., 68 F. Supp. 2d 602, 620 (D. Md. 1999). In accordance with the case law and the language in the ADA itself, this Court is deferential to the ADA implementing regulations when considering the question of "reasonableness."

because the parties dispute the reasonableness of the accommodation Mr. Dee requested; while not dispositive, these specific regulations provide the Court with useful guidance.

## IV. Jurisdiction

This case is properly before this court under 28 U.S.C. § 1333, federal question jurisdiction. Neither Plaintiff nor Defendants dispute this Court's jurisdiction. The ADA is a federal law and the entities in question fall properly under it.

Plaintiff brings this suit against a government entity, which immediately implicates sovereign immunity as a bar to his claim. However, Title II of the ADA properly abrogates sovereign immunity as provided by the Eleventh Amendment of the United States Constitution. United States v. Georgia, 546 U.S. 151, 158-59 (2006); Tennessee v. Lane, 541 U.S. 509 (2004). In Title II, Congress provided individuals with a private right of action and damages for discrimination on the basis of disability.[5] Georgia, 546 U.S. at 158-59.

The Maryland National Capital Park and Planning Commission and the Prince George's County Planning Department are undoubtedly public entities under the ADA. A "public entity" under the ADA includes "any state or local government" or "any department, agency, special purpose district or other instrumentality of a State or States or local government." 42 U.S.C. 12131. The Allentown Splash Park and Fitness Center is operated by the Prince George's County Planning Department and the Maryland National Capital Park and Planning Commission. This is uncontroverted by the parties.

---

[5] Congress properly did so by using its § 5 powers in the Fourteenth Amendment. Congress may abrogate state sovereign immunity by using its § 5 powers under the "Fourteenth Amendment to enforce substantive guarantees of that Amendment." Lane, 541 U.S. at 518.

V. **Analysis**

   a. *The Prince George's County Planning Department is Not the Proper Party, and the Court GRANTS summary judgment with respect to it.*

Defendants argue that "The Prince George's County Planning Department is an internal department of the Maryland-National Capital Park and Planning Commission and is not independently liable separate from the Commission." Defendants' Motion, at 3. Plaintiff concedes this point, indicating that the Prince George's County Planning Department is not a proper party to this law suit. Plaintiff's Response, at 1 n.1. As such, the Court GRANTS Defendants' Motion with respect to the Prince George's County Planning Department.

   b. *The Maryland National Capital Park and Planning Commission has not satisfied its burden of demonstrating that as a matter of law Plaintiffs cannot prevail, and therefore the Court DENIES summary judgment with respect to it.*

To state prima facie claim for failure to accommodate under the ADA, "a plaintiff must show that (1) he has a disability; (2) that he is otherwise qualified for the benefit in question; and (3) that he was excluded from the benefit due to discrimination solely on the basis of the disability." Baird v. Rose, 192 F.3d 462, 467 (4th Cir. 1999). See also Constantine v. Rectors and Visitors of George Mason Univ., 411 F.3d 474, 498 (4th Cir. 2005). "Title II forbids public entities - including State and local government and their departments, agencies, or instrumentalities - from excluding disabled persons from programs, services, or benefits 'by reason' of their disabilities." Constantine, 411 F.3d at 488. Failing to reasonably accommodate a qualified individual and thereby preventing his enjoyment of a public benefit is discrimination under the ADA. Defendants have not established that Mr. Dee cannot, as a matter of law, meet the foregoing burden.

> *i. Mr. Dee is a Qualified Individual under the ADA and Allentown Splash Park and Fitness Center is a Qualified Facility under the ADA.*

It is uncontroverted that Mr. Dee is a qualified individual under the ADA. Mr. Dee is blind and Defendants do not contest that he is disabled under the ADA. As a qualified individual under the ADA, Mr. Dee may not be excluded from accessing and using applicable public services and facilities "by reason of" his disability. Id.; Baird, 192 F.3d at 468-69. As discussed previously, Allentown is a public facility within the ADA and therefore, Mr. Dee's access to the facility is protected by the ADA. Defendants do not contest that Mr. Dee is "qualified" under the ADA or that the ADA applies to Allentown.

> *ii. The Reasonableness of the Accommodation that Mr. Dee Requested is a Factual Question.*

Reasonableness of the accommodation request is the touchstone of this ADA analysis. "Discrimination includes not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). For the purposes of summary judgment, Defendants argue that Plaintiff's request for accommodation was unreasonable as a matter of law. In contrast, Plaintiff argues that the reasonableness of his request is a factual question for the fact finder.[6] To defeat summary judgment Plaintiff need only show that there are material facts in dispute.[7]

---

[6] Plaintiff also argues that his request for accommodation was reasonable.

[7] The MCHR did not find that Mr. Dee had been discriminated against or that Allentown was inaccessible. Id. The MCHR found:

> "while it is incumbent upon a place of public accommodation to provide a 'reasonable accommodation' to the disabled, investigation was unable to conclude that Complainant's spur-of-the-moment request was, in fact, reasonable. Investigation was unable to support Complainant's allegation that Respondent failed to accommodate him."

Defendants' Motion, Exhibit 2, Written Findings of the MCHR, at 4. These findings, however, have no binding or precedential effect on this Court. Use of findings of the MCHR and similar administrative agencies by the Court is

The ADA requires that an accommodation request be reasonable. "A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities." Miller v. Hinton, 288 Fed. Appx. 901, 902 (4th Cir. 2008). The reasonableness of the accommodation requested is determined by the totality of the circumstances; whether the service, program, or activity operated or owned by the public entity, 'when viewed in its entirety,' is readily accessible." Levy, 104 F. Supp. 2d at 543-44. See also Waller v. City of Danville, Va., 556 F.3d 171, 175 (4th Cir. 2009). "Totality" includes the timing of the request, clarity of the communication of the request, and the nature of the request. See Waller, 556 F.3d at 175. The ADA itself provides some indication of what reasonable accommodations are, and the requirements are not without limitations. "Title II and its implementing regulations limit the scope of liability in important respects and thus minimize the costs of compliance with the statute." Constantine, 411 F.3d at 489. For example, as the implementing regulations explain, Title II does not require public entities to take action that would destroy historic significance, fundamentally alter the nature of the program or service, or

---

discretionary. See e.g., Conkwright v. Westinghouse Electric Corp., 739 F. Supp. 1006, 1015 (D. Md. 1990) ("In weighing a motion for summary judgment, the court may consider any material that would be admissible or usable at trial. Under Fourth Circuit law, the admission of findings of fact by the MCHR are discretionary with the trial court") (internal citations omitted)); Goldberg v. Green and Co., Inc., 836 F.2d 845 (4th Cir. 1988) (admission of MCHR findings was discretionary); Mason v. Richmond Motor Co., Inc., 825 F.2d 407 (4th Cir. 1987) (admission of EEOC findings was within discretion of the Court); Cox v. Babcock & Wilcox and Co., 471 F.2d 13, 15 (4th Cir. 1972) (admission of EEOC records was discretionary and "[e]rror cannot accordingly be sustained on account of the refusal of the District Court to admit such records."). In deciding whether to countenance MCHR findings, the Court should weigh the probative value of the information with its prejudicial effect. Conkwright, 739 F. Supp. at 1015 (citing Fed. R. Evid. 403) (Court weighed probative value versus prejudicial effect in deciding whether to consider the MCHR findings at summary judgment); Goldberg, 836 F.2d at 848 n. 4 ("while admission of such findings is within the discretion of the district court, such findings may be more prejudicial than probative"). Lastly, in deciding whether to credit the findings in an MCHR report, the Court must determine whether the report is reliable. Conkwright, 739 F. Supp. at 1015 (the Court found the report was not reliable, and therefore did not credit the report's findings at summary judgment). While the Court considers the MCHR findings, it does not adopt them. Instead, the Court finds it more appropriate to allow the fact-finder to determine the facts in this case.

make structural changes in existing facilities where other methods can achieve compliance. 28 C.F.R. § 35.150. The accommodation must be reasonable.

### A. Reasonableness of the Notice is a Factual Question.

First, Plaintiff and Defendants agree that Mr. Dee gave Allentown about thirty minutes notice of his arrival at Allentown and need for accommodation.[8] Defendant's Motion, at 1, 4; Plaintiff's Opposition, at 2. However, Plaintiff and Defendants disagree that thirty minutes is reasonable notice. Defendants claim that thirty minutes notice is per se unreasonable and renders Mr. Dee's entire request for accommodations unreasonable under the ADA. However, there is nothing in the ADA, implementing regulations, or case law indicating that, as a matter of law, thirty minutes notice to a facility is unreasonable.[9] Thus, "reasonableness" is a factual question and the amount of time alone is not the whole of the inquiry; the nature of the request and the clarity of the request are also essential to this inquiry. The dispute regarding reasonableness of notice is material; it goes directly to whether Mr. Dee's request for accommodation was reasonable, which is the crux of his claim.

### B. Reasonableness of the Kind of Accommodation Mr. Dee Asked Allentown to Provide is a Factual Question.

Mr. Dee submits that the kind of assistance he requested from Allentown is reasonable under the ADA. He states that he only requested assistance with getting from the lobby to the weight room and back again. This path required navigation through the locker room, but at no

---

[8] The MCHR found that Mr. Dee provided notice by cell phone approximately fifteen to twenty minutes before arriving at Allentown. Defendant's Motion, Exhibit 2, Written Findings of the MCHR, at 4. However, these factual findings do not sway the Court to find that Mr. Dee's notice was unreasonable. Even if Mr. Dee provided Allentown with fifteen minutes notice, no authority indicates that fifteen minutes notice is per se unreasonable.
[9] Defendants were also unable to provide any case law or guidance from the ADA implementing regulations indicating that there is a per se standard for timing of notice.

point did Mr. Dee request assistance with toileting or dressing.[10] For the purposes of Defendants' Motion, the Court must take these submissions as true, and in fact, Defendants' Motion does not dispute the kind of accommodation Mr. Dee requested. Defendants argue that the request was unclear. During his deposition Mr. Dee asserted at least four times that he merely asked for assistance negotiating Allentown's physical space.[11] Plaintiff's Opposition, Exhibit 1, 11-16. Importantly, the ADA implementing regulations specifically point to providing a guide to help a disabled person move through the physical space of a facility as one reasonable accommodation. 28 C.F.R. § 35.150. This element weighs heavily in favor of Plaintiff.

### C. Whether Mr. Dee Clearly Communicated his Accommodation Request is a Factual Issue.

Mr. Dee alleges that he clearly communicated his request to Defendants, while Defendants allege that Plaintiff did not make himself clear in requesting an accommodation. Defendants claim that Mr. Dee's lack of clarity renders his request for accommodation unreasonable as a matter of law. To establish discrimination as a failure of providing a reasonable accommodation a plaintiff must "have, at minimum, communicated to [the entity] a wish for accommodation of his disability." Parkinson v. Anne Arundel Medical Center, 79 Fed. Appx. 602, 604 (4th Cir. 2003) (citing Ballard v. Rubin, 284 F.3d 957, 960-962 (8th Cir. 2002).

Viewing the evidence in a light most favorable to the non-movant, a reasonable jury could conclude that Mr. Dee effectively communicated his request to Allentown. In his deposition, Mr. Dee testified that he clarified his request with Allentown at least four times.

---

[10] Requesting help with toileting and changing would likely be per se unreasonable, as the ADA implementing regulations specifically address this issue. For ADA compliance, the regulations do not "not require a public entity to provide to individuals with disabilities… services of a personal nature including assistance in eating, toileting, or dressing." 28 C.F.R. § 35.135

[11] The MCHR found likewise, determining that that Mr. Dee called Allentown's front desk directly, and "requested assistance with getting from Respondent's front desk to Respondent's fitness area." Defendants' Motion, Exhibit 2, Written Findings of the MCHR, at 4.

13

Plaintiff's Opposition, Exhibit 1, at 11-16.  His testimony also recounts his request as clearly communicated, each time saying that he needed assistance getting to and from the weight room and to and from the entrance of the building.  Id.  This testimony alone is sufficient to defeat summary judgment.  Second, Defendants claim that in order for a facility to determine whether a request is reasonable, the facility needs time to do a fact-based inquiry into the reasonableness of the request.  Thirty minutes, they claim, was insufficient to complete the fact-based inquiry as envisioned by the ADA.  Again, this is a factual inquiry; a fact-finder should decide whether Allentown had sufficient notice to determine whether Mr. Dee's request was reasonable.  Mr. Dee has presented enough support for a reasonable jury to find that Allentown had sufficient notice to make a factual inquiry about the reasonableness of assisting Mr. Dee.

### iii.  Intentional Discrimination and Compensatory Damages

Plaintiff seeks compensatory damages for injuries caused by Defendant's alleged discrimination.  "The mere violation of the ADA does not alone establish injury.  A plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA caused him actual injury before such plaintiff can recover."  Levy, 104 F. Supp. 2d at 544 (internal citations omitted).  It is incumbent on Mr. Dee to show that he has sustained an actual injury to recover damages and here, he must show that the injury was the result of intentional discrimination.

Plaintiff alleges that he need not assert discriminatory intent to overcome summary judgment.  He is incorrect.  To make a claim for compensatory damages under the ADA a Plaintiff must allege that the Defendant had discriminatory intent.  Adams v. Montgomery Coll., No. DKC-09-2278, 2001 WL 2813346, at *5 (D. Md. July 15, 2010) (discriminatory intent "is necessary to state a claim for compensatory damages under the Americans with Disabilities Act ('ADA') and the Rehabilitation Act").  Discriminatory intent is necessary because the ADA

14

incorporates the remedies of the Rehabilitation Act. 42 U.S.C. § 12133. In turn, the Rehabilitation Act incorporates the remedies of Title IV of the Civil Rights Act of 1964. 29 U.S.C. § 794(a); 42 U.S.C. § 2000(d). Under Title IV, and thus the ADA, compensatory damages are available only where there is "intentional discrimination." Kolstad v. Am. Dental Ass'n., 527 U.S. 526, 533-34 (1999). In the Fourth Circuit, the standard for "intentional discrimination" is "disparate treatment." Pandazides v. Va. Bd. of Educ., 13 F.3d 823, 830 n.9 (4th Cir. 1994). Demonstrating "disparate treatment" requires that the party "prove that the defendant's conduct was intentional, but they need not prove that the defendants either knew or should have known that they were violating the law." Kolstad, 527 U.S. at 550. "Intentional discrimination is shown by an intentional, or willful, violation of the act itself." Falls v. Prince George's Hosp. Ctr., No. Civ.A. 97-1545, 1999 WL 33485550, at *10 (D. Md. March 16, 1999). Key here is that the *actions* must be willful, not the violation of the law; the entity can believe itself in compliance and still "intentionally violate" the ADA. Id. It is the intentional withholding of an accommodation that is the intentional discrimination. Id.

For the purposes of summary judgment, Plaintiff must present the Court with sufficient evidence that Allentown's staff intentionally prevented him from using the facilities, but he need not present evidence that the staff knew they violated the ADA. Viewing the evidence in a light most favorable to the non-movant, Plaintiff has provided enough support to meet this standard. Four distinct times Mr. Dee expressed to Allentown's manager that he needed assistance navigating the facility. Mr. Dee explained his request once over the phone on his way to Allentown, once when he arrived, once as he tried to navigate to the men's locker room, and again after he unsuccessfully attempted to walk to the men's locker room. Plaintiff's Opposition, Exhibit 3, at 8-10. In each of these situations, the manager flatly rejected accommodating Mr.

15

Dee, and finally saying "no I told you…we will not help you." Id. at 9. In addition to herself denying Mr. Dee's request for assistance, the manager also affirmatively obstructed another Allentown employee from accommodating Mr. Dee. Id. at 9 ("… one of the gentlemen that was standing behind the desk or in that area volunteered and said that he would help. And she told him 'no, he will get there by himself, we will not help him.'"). See also Id. at 9-10 (I "asked if someone could at least help me navigate through the locker room area. And of course her response was, 'no get there on my own.'" And, "I went back out and asked again for help, by the gentleman who was behind the desk, thinking that Ms. Richardson had gone. And she was there and said, 'no, I told you – she continued in saying the same thing over and over again."). Based on Mr. Dee's deposition testimony, a reasonable jury could find that Allentown employees were purposeful in denying Mr. Dee the accommodation. The conversation demonstrates intentional conduct – the Allentown manager was intentional in denying Mr. Dee the accommodation and intentional in preventing other employees from assisting Mr. Dee. Demonstrating that a reasonable jury could find the conduct intentional is sufficient to overcome summary judgment on this element.

## VI. Conclusion

Viewing the evidence presented in a light most favorable to Plaintiff, a reasonable jury could find that Mr. Dee made a clear and reasonable request for accommodation and Defendants intentionally discriminated against him by failing to provide that reasonable accommodation.

For the foregoing rational, the Court GRANTS summary judgment as to the Prince George's County Planning Department and DENIES summary judgment as to the Maryland Capital Park and Planning Commission.

_____/s/_____

Charles B. Day  
United States Magistrate Judge

CBD/ec